SALOMON *et al. v.* ROBERTSON, Collector.

(*Circuit Court, S. D. New York.* January 27, 1889.)

CUSTOMS DUTIES—CLASSIFICATION—SEEDS—VEGETABLES.

Common field beans used for food, *held* to be dutiable as "vegetables" at 10 per centum *ad valorem,* under Schedule G, tariff act of March 3, 1883, and not free as "seeds."

At Law. Motion for a direction of verdict.

This action was brought by Louis A. Salomon and Charles Salomon against William H. Robertson, collector of the port of New York, to recover duties paid upon three several importations of ordinary field beans by the plaintiffs in 1884, upon which the defendant collector of the port exacted a duty of 10 per cent. as vegetables, under Schedule G of the tariff act of March 3, 1883, (Tariff Index, 286.) The plaintiffs protested against this exaction, and claimed the same were free of duty, under section 2503, Rev. St., (Id. 760,) which reads as follows: "Plants, trees, shrubs, and vines of all kinds, not otherwise provided for, and seeds of all kinds, except medicinal seeds not specially enumerated or provided for in this act." This action was once before tried in the United States circuit court in the southern district of New York, in 1886, and then resulted in a verdict in favor of the plaintiffs. By writ of error it was taken to the United States supreme court, which reversed the judgment of the court below, and ordered a new trial. 130 U. S. 412, 9 Sup. Ct. Rep. 559. It was contended on behalf of the plaintiffs that nothing had been really decided by the United States supreme court in this case, except that the court below had erred in its charge to the jury, and had excluded testimony as to the common designation of beans when used for food, and that the real question in controversy still remained undecided. It appeared from the testimony that the words "vegetables" and "seeds" had no different meaning in trade and commerce than their ordinary meaning. It also appeared that the beans in controversy were not such as were usually sold as seeds by seedsmen; that beans, when used as seeds, were carefully cultivated, their different varieties kept separate, and carefully picked and assorted, and guarantied to contain germinating properties, and were usually sold within a year or two after being gathered, and before they had become changed in color by age, or had lost their full germinating power. At the close of the testimony counsel for the defendant made a motion for a direction of a verdict for the defendant, on the following grounds: *First,* that the plaintiffs had not shown facts sufficient to entitle them to recover; *second,* that the words "vegetables" and "seeds" had no different meaning in trade and commerce from their ordinary meaning,—that they were words of common speech, and their interpretation was matter of law for the court; *third,* that the treasury department had classified beans and peas used for food as "vegetables," and subject to the vegetable duty, long prior to the passage of the tariff act of March 3, 1883, (Treasury Decisions of May 11, 1886; and also

S. S. 76, 3848,) and congress must therefore have had in mind the previous and concurrent rulings of the treasury department in using the term "vegetables" in the tariff act of March 3, 1883; *fourth*, also that the word "vegetables" was a more specific designation than the word "seeds;" *fifth*, also that their classification as "vegetables" had been approved in the case of *Windmuller* v. *Robertson*, 23 Fed. Rep. 652; *sixth*, that the undisputed evidence tended to show that the articles in suit were intended to be used, and were imported to be used, for food, as shown by the oath of one of the plaintiffs written on the face of the entries in this case; *seventh*, that if the articles were not enumerated in the tariff act of March 3, 1883, under either of the words "vegetables" or "seeds," they would still be dutiable at 10 per centum *ad valorem* as a non-enumerated unmanufactured article, under section 2513, Rev. St. U. S.

*Tremain & Tyler*, for plaintiffs.

*Edward Mitchell*, U. S. Atty., and *Henry C. Platt*, Asst. U. S. Atty., for defendant, citing *Marvel* v. *Merritt*, 116 U. S. 11, 6 Sup. Ct. Rep. 207; *Maillard* v. *Lawrence*, 16 How. 251; *Greenleaf* v. *Goodrich*, 101 U. S. 278; *Brown* v. *Piper*, 91 U, S. 37, 42; *Nix* v. *Hedden*, 39 Fed. Rep. 109; *Bogle* v. *Magone*, 40 Fed. Rep. 226.

LACOMBE, J., (*orally.*) The question before us is—How shall this article of importation (white beans) be classified for purposes of duty? The first question that is always put in a case of that kind is, what is the commercial designation of the article? The answer to that question in this case, by undisputed testimony, is that it is known in trade and commerce as "beans," or more specifically as "white beans," "medium beans," "black beans," or what you will; it is known commercially only as "beans," and the particular article here as "white medium beans." Having found out what the commercial designation of the article is, the next step is to turn to the tariff, and find that designation there. Unfortunately in this case, we do not find the word "beans" anywhere in the tariff act, save in a single section, (paragraph 94,) which the supreme court has held does not apply to this article at all, but to the kind of beans which have been illustrated in this case by the castor-bean, the tonka-bean, the *nux vomica* bean, and other beans which are not edible. Inasmuch as this article which is commercially known as "beans" is not found covered by that commercial expression in the tariff, we have to discover, if we can, by what other expression it is covered, if at all. Looking through the tariff for words which may properly describe the article, we find the word "seeds;" and this is undoubtedly the seed of the field bean. Botanically, it is a seed, and in the common use of language when it is spoken of in connection with the purpose of propagation, it is a seed, and would be so described. Looking further along in the act, we find the word "vegetables," and these articles, when they are used as food by man or by beast, would be referred to in every-day speech as "vegetables." There are, then, two words in the act which, when interpreted according to their common every-day use, are each of them sufficiently broad to cover the particular article here. The next question is

whether the every-day use of the term has been modified by any commercial usage. The proof here, even on the part of the plaintiffs, is— I refer particularly to the testimony of Messrs. Wakeman and Ahles— that there is no difference between the commercial and the ordinary meaning of the words "seeds" and "vegetables." A seed is a seed, and a vegetable is a vegetable, say the witnesses, whether in commercial language or in every-day life. Now the supreme court have held over and over again that where words are not used technically, or have not been wrenched from their ordinary meaning by commercial usage, their interpretation is for the court. That same tribunal has, moreover, in this very case, interpreted both those terms, "seeds" and "vegetables." *Robertson* v. *Salomon,* 130 U. S. 412, 9 Sup. Ct. Rep. 559.

As there are two words in the tariff act, each broad enough to cover the article, it only remains to determine under which it shall be classified for duty, whether as a seed or as a vegetable. Turning to the decision of the supreme court, (130 U. S. 412, 9 Sup. Ct. Rep. 559,) I cannot escape the conviction that whatever the phraseology of the statute may now be, or whatever it may have been before the amendment of 1883, it was the clear understanding of the supreme court that such determination must be according to the use of the article. This seems to be quite sharply indicated by the phraseology of the opinion. Thus in one place it is said that "as an article of food on our tables * * * they are used as a vegetable." Elsewhere in the opinion it is held error in the circuit court not to allow the defendant to prove "the designation of beans as an article of food," the supreme court saying that "the common designation, as used in every-day life, when beans are used as food, (which is the great purpose of their production,) would have been very proper." Why it would have been proper to introduce testimony as to how the beans were called when they were used as food, I fail to see, unless it was on the principle that the use of the article was to determine its classification.

The use of an article is a question of fact, and I should send this case to the jury, were it not for the testimony of the plaintiff, which is that, as to this particular importation, the affidavit which he made upon the back of the entry is a true statement; that affidavit stating that the beans are to be used exclusively as food. For that reason I shall direct a verdict for the defendant. Verdict accordingly.